1 | **THE URBAN LAW FIRM**
MICHAEL A. URBAN, Nevada State Bar No. 3875
2 | NATHAN R. RING, Nevada State Bar No. 12078
4270 S. Decatur Blvd., Suite A-9
3 | Las Vegas, Nevada 89103
Telephone:  (702) 968-8087
4 | Facsimile:  (702) 968-8088
E-mail:   murban@theurbanlawfirm.com
5 |             nring@theurbanlawfirm.com

6 | *Counsel for Plaintiffs*

7 | **UNITED STATES DISTRICT COURT**

8 | **DISTRICT OF NEVADA**

9 |
TRUSTEES OF THE BRICKLAYERS &          CASE NO.:  2:11-cv-00510-GMN-PAL
10 | ALLIED CRAFTWORKERS LOCAL 13
DEFINED CONTRIBUTION PENSION
11 | TRUST FOR SOUTHERN NEVADA;
TRUSTEES OF THE BRICKLAYERS &          **FINDINGS OF FACT, CONCLUSIONS OF**
12 | ALLIED CRAFTWORKERS LOCAL 13          **LAW, AND ORDER GRANTING**
**DEFAULT JUDGMENT AGAINST**
13 | HEALTH BENEFITS FUND; TRUSTEES       **MARBELLA FLOORING, INC. AND**
OF THE BRICKLAYERS & ALLIED            **ROBERT OLMOS**
14 | CRAFTWORKERS LOCAL 13
VACATION FUND; BRICKLAYERS &
15 | ALLIED CRAFTWORKERS LOCAL 13
NEVADA; TRUSTEES OF THE
16 | BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND;
17 | TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL
18 | HEALTH FUND; and TRUSTEES OF THE
INTERNATIONAL MASONRY
19 | INSTITUTE,
20 |
                       Plaintiffs,
21 |
            vs.
22 |
MARBELLA FLOORING, INC., a
23 | California Corporation; ROBERT IMUS, an
individual; and ROBERT OLMOS, an
24 | individual,
25 |
            Defendants.
26 |
27 |
28 |

6124

1

This matter came before the Court on Plaintiffs, TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 DEFINED CONTRIBUTION PENSION TRUST FUND; TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 13 HEALTH BENEFITS FUND; BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL 13, NEVADA (hereinafter "Local 13"); TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND; TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS INTERNATIONAL HEALTH FUND; TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS INTERNATIONAL ANNUITY FUND and TRUSTEES OF THE BRICKLAYERS & ALLIED CRAFTWORKERS INTERNATIONAL MASONRY INSTITUTE (collectively hereinafter "Plaintiffs"), Motion for Default Judgment against Defendants, MARBELLA FLOORING, INC. ("Marbella") and ROBERT OLMOS ("Olmos") (collectively hereinafter "Defendants"). Having considered the Plaintiffs' motion for Default Judgment, noting the Defendants' failure to file a response to the Plaintiffs' motion, and considering itself fully apprised of the facts in this case, this Court issues the following findings of fact, conclusions of law and order:

## FINDINGS OF FACT

The Plaintiffs are collective bargained employee fringe benefit trust funds, also called Taft-Hartley Trust Funds, existing pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 186(c). The Plaintiffs brought this action against the Defendants pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1132. Plaintiffs' complaint alleged Defendant Marbella failed to pay fringe benefit contributions due and owing to the Plaintiffs. The Plaintiffs alleged the contributions were due under a collective bargaining agreement between Marbella and Local 13. Plaintiffs' alleged Olmos, as the controlling shareholder of Marbella, was a fiduciary of the Trusts and responsible, jointly and severally, with Marbella for the non-payment of fringe benefit contributions. Plaintiffs' complaint also sought (contingent upon their recovery of the unpaid contributions shown on the audit report) liquidated damages, audit costs, pre-judgment interest, and attorneys' fees and costs from Marbella and Olmos. These additional amounts are

1  provided for within the parties' collective bargaining agreement and are mandated within

2  Section 502 of ERISA.  29 U.S.C. § 1132(g)(2).

3  **A. The Collective Bargaining Agreement**

4  On March 23, 2009, Marbella executed a Memorandum of Individual Employer.

5  Marbella voluntarily recognized Local 13 as the bargaining representative of its employees.  By

6  signing the Memorandum of Individual Employer, Marbella agreed to be bound by the terms of

7  the collective bargaining agreement with Local 13 and to make contributions to the Plaintiffs

8  consistent with the Formal Declarations of Trust ("Trust Agreements") incorporated into the

9  collective bargaining agreement.  The trust agreements created and govern the operation of the

10  Plaintiff Trusts.

11  The collective bargaining agreement required Marbella to calculate and report fringe

12  benefit contributions for each hour of work performed by its employees on work covered under

13  the collective bargaining agreement.  The collective bargaining agreement permits the Plaintiffs

14  or their authorized agents to conduct audits of Marbella's payroll and related records.  The

15  Plaintiffs regularly audit employer payroll records to ensure compliance with the trust

16  agreements.  Robert Olmos is treasurer, secretary, and the controlling shareholder of Marbella

17  and responsible for the submission of contributions to the Plaintiffs.  The Trust Agreements

18  provide that contributions whether made or to be made are assets of the Plaintiff Trusts.

19  **B. Marbella Failed to Pay Required Contributions**

20  H. G. "Gus" Sand & Associates (hereinafter "GSA") is a private accounting firm and

21  authorized agent of the Plaintiffs.  GSA performed an audit of Marbella's payroll and related

22  records.  GSA prepared the results of the audit and submitted the results to Marbella and Olmos

23  for payment of the delinquencies discovered.  Defendants refused to pay the delinquent

24  contribution amounts to the Plaintiffs and failed to respond to Plaintiffs' counsel's final demand

25  letter.  Marbella and its controlling shareholder, Olmos, cannot dispute the accuracy of their own

26  payroll and related records, which were used to perform the audit.

27  The Plaintiffs' audit of Marbella's payroll and related records revealed that Marbella

28  failed to pay monthly contributions to the Plaintiff Trusts in the amount of $12,476.00.  Pursuant

to the collective bargaining and trust agreements, the Plaintiffs' discovery of $12,476.00 in unpaid contributions entitled them to $2,408.75 in liquidated damages and $1,596.39 in audit costs. The collective bargaining agreement also provided for the Trusts' recovery of prejudgment interest at the contractual rate of fourteen percent (14%) per annum and recovery of their attorney's fees and costs incurred in pursuing the unpaid contributions. The Trusts' attorney's fees and costs totaled $12,292.88 and prejudgment interest totals $3,645.92.

### C. Marbella and Olmos Failed to Answer the Complaint and Default was Entered by the Clerk of this Court

Plaintiffs' agent served Marbella with the summons and complaint on Aril 12, 2011. Plaintiffs' complaint was well-pled, including specific factual allegations, and the statutory basis for the Defendants' liability. Plaintiffs' agent personally served Olmos with the summons and complaint on April 20, 2011.[1] Pursuant to Federal Rule of Civil Procedure 12(a), Marbella's response was due no later than May 2, 2011, and Olmos' response was due no later than May 11, 2011. Marbella and Olmos failed to respond to the summons and complaint within the statutorily prescribed period, and the Plaintiffs moved for Entry of Clerk's Default against Marbella and Olmos. Plaintiffs served Marbella and Olmos with the Request for Entry of Clerk's Default. Because neither Marbella nor Olmos answered or otherwise responded to the complaint, on May 6, 2011, the Clerk of Court entered Default against Marbella, and on May 18, 2011, the Clerk of Court entered Default against Olmos.

The Plaintiffs provided additional time, after Marbella and Olmos had been defaulted, to allow the Defendants to appear in the case. The Defendants did not appear in the case, and on July 1, 2011, the Plaintiffs filed a Motion for Default Judgment with this Court and served Marbella and Olmos with the motion. The Plaintiffs permitted Marbella and Olmos an additional week beyond the time for response provided in the Federal Rules of Civil Procedure, but Marbella and Olmos did not respond to the Plaintiffs' motion or appear in the case. As a

---

[1] Although not germane to this Order named Defendant Robert Imus was not personally served with a copy of the summons and complaint. Plaintiffs' counsel and their agents made several attempts to serve Mr. Imus, but all of their attempts to serve Mr. Imus were unsuccessful.

1    result, Plaintiffs filed a Notice of Non-Opposition with this Court regarding Marbella and

2    Olmos' failure to respond to the Motion for Default Judgment.  This Court carefully considered

3    the Plaintiffs' motion, the affidavits filed in support of their motion, and supporting documents

4    attached and incorporated into the affidavits, and now grants default judgment to the Plaintiffs

5    and against Marbella and Olmos.

6                                **CONCLUSIONS OF LAW**

7        Plaintiffs are entitled to default judgment against Marbella and Olmos because the

8    Defendants failed to abide by the terms of the collective bargaining agreement and related trust

9    agreements.  In addition to breaching the collective bargaining agreement and related trust

10   agreements, Defendants are liable to the Plaintiffs for breaching their fiduciary and co-fiduciary

11   duties to the Trusts, their participants, and beneficiaries.

12   **A.   MARBELLA   BREACHED   THE   COLLECTIVE   BARGAINING
         AGREEMENT, RELATED TRUST AGREEMENTS AND VIOLATED**
13       **ERISA**

14       When a Court considers a motion for default judgment, all allegations in the complaint,

15   with the exception of those allegations relating to the amount of damages, are taken as true.

16   Geddes v. United Financial Corp., 559 F.2d 557, 560 (9th Cir. 1977); FED. R. CIV. P. 8(d).  In

17   their complaint, the Plaintiffs alleged that Marbella agreed to the terms of the collective

18   bargaining agreement with Local 13.  The Plaintiffs supplemented their allegations in the

19   complaint by submitting signed documents showing Marbella's written agreement to be a party

20   to the collective bargaining agreement.  Marbella and Olmos failed to respond to the complaint;

21   it is therefore established that Marbella is bound by the terms of the collective bargaining and

22   related trust agreements of the BAC Trusts and International Trusts contained therein.  Even if

23   Marbella and Olmos had responded to the Complaint or opposed the Plaintiffs' motion, this

24   Court would still conclude that Marbella was bound to the collective bargaining agreement and

25   related trust agreements.

26       The collective bargaining agreement in this case requires employers, including Marbella,

27   to make fringe benefit contributions for each hour of covered work performed by each covered

28   employee.  It is well-established in this Circuit that similar contractual provisions for the

collection of fringe benefit contributions are approved of and well within the mandates of ERISA.   <u>Waggoner v. Wm. Radkovich Co., Inc.</u>, 620 F.2d 206 (9th Cir. 1980); <u>Burke v. Lenihan</u>, 606 F.2d 840 (9th Cir. 1979); <u>Waggoner v. C & D Pipeline Co.</u>, 601 F.2d 456 (9th Cir. 1979).   In fact, the collective bargaining agreements approved of in <u>Wm. Radkovich Co., Inc.</u>, <u>Burke</u>, and <u>C & D Pipeline Co.</u> are substantially similar to the collective bargaining agreement at issue here, though, with minor differences.   In <u>C & D Pipeline</u>, the Ninth Circuit stated:

> [t]he agreement requires employers to make contributions for all hours worked by employees who perform any work covered by the agreement.
> * * *
> A requirement that contributions be based on all hours worked or paid permits the trustees to rely on payroll records to determine if employers are making proper contributions to the trust funds.

601 F.2d at 459.   In this case, the required contributions are for hours of covered work performed by each covered employee.   Such a method for calculating contributions is supported by binding Ninth Circuit precedent.

ERISA places an affirmative duty upon employers to maintain proper payroll and related records.   <u>Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.</u>, 839 F.2d 1333, 1338 (9th Cir. 1988).   Marbella held the primary responsibility for calculating and reporting the amount of fringe benefit contributions due to the Plaintiffs by completing approved monthly reporting forms and mailing those forms to the Plaintiffs.   In addition to collecting contribution reports, the Plaintiffs engage an independent auditing firm to perform in-depth audits of all employers' payroll and related records, including Marbella's payroll and related records.   An audit of Marbella's records revealed Marbella significantly underreported the contribution amounts it owed to the Trusts.   Marbella did not answer the Plaintiffs' complaint or respond to the Plaintiffs' Motion for Default Judgment.   For that reason, the allegations within the Plaintiffs' complaint are taken as true.   *See* <u>Geddes</u>, 559 F.2d at 560.   Accordingly, Marbella has admitted that it owes delinquent contributions to the Trusts.   *See* <u>id</u>.   Marbella remains liable to the Plaintiffs for the unpaid fringe benefit contributions.   *See* <u>Operating Eng'rs Pension Trust vs. A-C Co.</u>, 859 F.2d 1336, 1342 (9th Cir. 1988).

**B.    THE COLLECTIVE BARGAINING AGREEMENT AND 29 U.S.C. § 1132(g)(2) REQUIRE PAYMENT OF LIQUIDATED DAMAGES, PREJUDGMENT INTEREST, AND ATTORNEY'S FEES AND COSTS TO THE PLAINTIFFS.**

The collective bargaining agreement, to which Marbella is bound, contains provisions requiring delinquent employers pay liquidated damages, prejudgment interest, auditing costs, and attorney's fees and costs of the Trusts when the Trusts recover delinquent fringe benefit contributions. Ninth Circuit precedent holds such a clause fully enforceable because of "the federal labor policy of enforcing the parties' intent as expressed in their negotiated agreement." Waggoner v. Nw. Excavating, Inc., 642 F.2d 333, 339 (9th Cir. 1981), *reaff'd on remand* 685 F.2d 1224 (9th Cir. 1982). Other federal courts have also upheld and enforced liquidated damages provisions where, as here, the amount of liquidated damages is reasonable. *See, e.g.,* U.S. for the Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793 (1957) (approving a liquidated damages clause); United O.A.B. & S.M.U. 21 v. Thorlief Larson & Son, Inc., 519 F.2d 331, 337 (9th Cir. 1975) (same). Pursuant to Ninth Circuit precedent, the terms of the collective bargaining agreement, as it was negotiated and agreed to by the parties, should be upheld and the Plaintiffs are entitled to their contract remedies of liquidated damages, prejudgment interest, auditing costs, and attorneys' fees and costs.

In addition to the parties' collective bargaining agreement providing for the payment of liquidated damages, prejudgment interest, auditing costs and attorney's fees and costs, Section 502 of ERISA, 29 U.S.C. § 1132, mandates the payment of such amounts. Congress amended 29 U.S.C. § 1132 in 1980 to specifically provide for the payment of prejudgment interest, liquidated damages and attorney's fees and costs to the Plaintiffs when they recover unpaid fringe benefit contributions. Section 502 of ERISA, 29 U.S.C. § 1132(g)(2) provides:

> (2)  In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, ***the court shall award the plan***:
> (A)    the unpaid contributions,
> (B)    ***interest on the unpaid contributions***,
> (C)    an amount equal to the greater of--
>   (i)     ***interest on the unpaid contributions***, or
>   (ii)    liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentages as may be permitted under Federal or

1
          State law) of the amount determined by the court under subparagraph (A),

2
    (D)   ***reasonable attorney's fees and costs*** of the action, to be paid by the defendant, and

3
    (E)   such other legal and equitable relief as the court deems appropriate.

4
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none,

5
the rate prescribed under section 6621 of title 26.

6 29 U.S.C. § 1132(g)(2) (emphasis added).   The controlling statute itself contemplates, and

7 indeed, mandates an award of prejudgment interest, liquidated damages and attorneys' fees and

8 costs.  <u>Kemmis v. McGoldrick</u>, 706 F.2d 993, 997-98 (9th Cir. 1983); <u>San Pedro Fisherman's</u>

9 <u>Welfare Trust Fund v. DiBenardo</u>, 664 F.2d 1344 (9th Cir. 1982) (holding the damages

10 specified in 29 U.S.C. § 1132(g)(2), including attorneys' fees, must be awarded whenever an

11 ERISA trust fund obtains a judgment for unpaid contributions against an employer).

12       **1.    Liquidated Damages**

13       An employer must pay liquidated damages to an employee-benefit trust fund when "(1)

14 the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of

15 suit, and (3) the plan provides for liquidated damages." <u>Nw. Adm'rs, Inc. v. Albertson's, Inc.</u>,

16 104 F.3d 253, 259 (9th Cir. 1996) (citing <u>Idaho Plumbers & Pipefitters Health and Welfare Fund</u>

17 <u>v. United Mech. Contractors, Inc.</u>, 875 F.2d 212, 215 (9th Cir. 1989)); *see also* <u>Trs. of the</u>

18 <u>Constr. Industry and Laborers Health and Welfare Fund v. B. Witt Concrete Cutting, Inc.</u>, 685

19 F. Supp. 2d 1158, 1162 (D. Nev. 2010).   Circuit Courts of Appeal throughout the country have

20 approved awards of liquidated damages under facts similar to or exactly like the facts in this

21 case.  The United States Court of Appeals for the Second Circuit noted the case law in this area

22 when it stated:

23
    [T]he Fifth, Seventh, Eighth, and Ninth Circuits have held or indicated that an employer cannot escape its statutory liability for

24
interest, liquidated damages or double interest, attorneys fees, and costs simply by paying the delinquent contributions before the entry

25
of judgment in a § 1132 (g)(2) action brought to recover delinquent contributions.

26

27 <u>Iron Workers Dist. Counsel of W. N.Y. v. Hudson Steel Fabricators & Erectors, Inc.</u>, 68 F.3d

28 1502, 1508 (2d Cir. 1995); *see also* <u>Nw. Adm'rs., Inc.</u>, 104 F.3d at 258 (liquidated damages

1    awarded despite defendants' post-suit, prejudgment payment of delinquent contributions);

2    Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645 (7th

3    Cir. 2001); Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir.

4    1988).

5       Here, without including check-off dues and other items owed to Local 13, the principal

6    amount of unpaid fringe benefit contributions, due and owing to the Trusts totals $12,476.00.

7    Pursuant to 29 U.S.C. § 1132(g)(2) and applying the liquidated damages clause in the parties'

8    agreements, which mandates 20% of the amount of unpaid contributions be paid as liquidated

9    damages, Plaintiffs would be entitled to liquidated damages in the amount of $2,408.95.

10    However, under 29 U.S.C. § 1132(g)(2)(C)(i), the Plaintiffs are entitled to double their

11    prejudgment interest collectable because that amount is higher than the liquidated damages

12    allowable under the collective bargaining agreement. 29 U.S.C. § 1132(g)(2)(C)(i). Marbella is

13    liable to the Plaintiffs for the unpaid contributions and the amount of $3,645.92 in double

14    interest, in lieu of contractual liquidated damages.

15           **2.    Prejudgment Interest**

16       In addition to unpaid contributions and double interest in lieu of liquidated damages, 29

17    U.S.C. § 1132 (g)(2)(B) requires delinquent employers to pay prejudgment interest on all unpaid

18    contributions. Prejudgment interest accrued daily on the amounts due at the parties' contractual

19    rate of fourteen-percent (14%) per annum. Marbella must pay the amount of $3,645.92 to the

20    Plaintiffs as and for prejudgment interest on Marbella's unpaid contributions.

21           **3.    Attorneys Fees**

22       District Courts are statutorily mandated to award employee-benefit trust funds their

23    reasonable amount of attorney's fees and costs expended in collecting unpaid fringe benefit

24    contributions. Trs. of the Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 931

25    (9th Cir. 1986) (citing Lads Trucking v. Board of Trs., 777 F.2d 1371, 1373 (9th Cir.1985);

26    Operating Eng'rs. Pension Trust v. Beck Eng'g. & Surveying, 746 F.2d 557, 569 (9th Cir.1984);

27    Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir.1984); Kemmis v.

28    McGoldrick, 706 F.2d at 997-98; San Pedro Fishermen's Welfare Trust Fund, 664 F.2d at

1346)).   Under the terms of the collective bargaining agreement and pursuant to 29 U.S.C. § 1132(g)(2), the Plaintiffs are entitled to their attorneys' fees and costs in the amount of $12,292.88 ($11,501.00 in attorney's fees and $791.88 in costs).   The amount of fees is reasonable in this matter because it was fully supported by the declaration of Plaintiffs' counsel and the recovery without attorney's fee was approximately twice the amount of fees expended.

## C.   DEFAULT JUDGMENT IS PROPER BECAUSE ALL EITEL FACTORS WEIGH HEAVILY IN FAVOR OF ENTERING DEFAULT JUDGMENT AGAINST DEFENDANTS.

Federal Rule of Civil Procedure 55(b) permits this Court to enter default judgment. FED. R. CIV. P. 55(b).   District Courts in this Circuit consider the following factors when exercising their discretion to enter default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   The balancing of each of these factors weighs heavily in favor of entering default judgment in this case.

### 1.   Plaintiffs will be greatly prejudiced unless the motion for default judgment is granted.

For several reasons, Plaintiffs will suffer great prejudice if this Court does not grant their motion for default judgment.   Plaintiffs have expended many hours of effort and thousands of dollars in auditing costs and attorney's fees in pursuit of their claim.   If this Court were to deny judgment, the Plaintiffs would have pursued their viable claim for what would essentially be no purpose.   In addition, Plaintiffs have no other way in which to obtain an enforceable form of relief against Marbella or Olmos; only a judgment will allow the Plaintiffs to secure the delinquent fringe benefit contributions via execution.   Further, Plaintiffs' beneficiaries stand to lose the benefit of their personal contributions because of the Defendants' breach of the collective bargaining agreement and related trust agreements.

///

### a.   Plaintiffs went to great expense to pursue their claim

Plaintiffs have spent substantial time and effort itemizing and proving their claim against the Defendants.  Plaintiffs filed their complaint on April 6, 2011 and served the complaint upon Marbella and Olmos on April 12, 2011 and April 20, 2011, respectively.  The Defendants' defaults were entered on May 6, 2011 and May 18, 2011, respectively, after they failed to respond to the Plaintiffs' complaint.

As a result of Defendants' continued non-compliance with the relevant agreements and the Federal Rules of Civil Procedure, Plaintiffs were forced to file a motion for default judgment for the purpose of collecting delinquent contributions and related damages.  Prior to the time they filed their complaint in this case, the Plaintiffs expended great amounts of time and effort attempting to collect from the Defendants. The Plaintiffs' attempts to resolve the matter amicably were unsuccessful.  Only after unsuccessfully attempting to resolve the matter did the Plaintiffs file this case.   In light of the great effort expended in attempting to procure Defendants' compliance with the relevant agreements; Plaintiffs' counsel preparing and filing a well-pled complaint, requesting entry of default against both defendants; and preparing a Motion for Default Judgment, the fees and costs incurred by Plaintiffs are reasonable.  The Plaintiffs went to great expense to pursue this claim and it would be inequitable for them to not be permitted judgment because the Defendants refused to appear or defend this case.

### b.   Plaintiffs have no other form of obtaining relief.

A default judgment is the final form of relief available to the Plaintiffs in this action. Prior to filing their complaint, Plaintiffs attempted to obtain Defendants' compliance with the applicable Agreements.   Defendants were continually uncooperative throughout the entire process, and Plaintiffs were required to file this case to enforce their rights under the collective bargaining agreement and related trust agreements.

Defendants have been repeatedly noncompliant with the Plaintiffs' demands and this Court's procedural rules.   Accordingly, Plaintiffs request an executable judgment for the purpose of securing the unpaid fringe benefit contributions and other relief to which they are

1  legally entitled.  The only manner in which the Plaintiffs may secure this judgment is through a

2  grant of default judgment.

3        **2.     Plaintiffs' substantive claims would be successful if tried on the merits.**

4      Plaintiffs' rights and Defendants' obligations are explicit and well-established by a

5  contractual relationship.  The facts of this case are straightforward, simple, and uncontested.

6  Marbella is obligated, under a collective bargaining agreement, to pay fringe benefit

7  contributions at a defined rate for each hour of covered work performed by its employees.

8  Marbella failed to submit monthly reports demonstrating whether or not it properly paid fringe

9  benefit contributions on behalf of its employees.  The Plaintiffs' authorized agent's audit clearly

10  showed Marbella failed to pay fringe benefit contributions to the Plaintiff Trusts.

11      The hours worked by Marbella employees, for whom Marbella paid no fringe benefit

12  contributions, were determined methodically by the Plaintiff's auditor's analysis of Marbella's

13  own payroll and related records.  The audit used Marbella's own records to discover that

14  Marbella had not properly paid fringe benefit contributions.  The calculations made are

15  verifiable, indisputable, and were conducted according to proper standards within the auditing

16  profession.  Even if the Defendants had answered the complaint and defended this suit, their

17  argument would still fail because they would be unable to support their claims with either facts

18  or law.  In fact, voluminous case law supports the judgment this Court now enters for the

19  Plaintiffs.

20        **3.     The causes of action in the complaint were pled with specificity, and
21  Plaintiffs adhered to the service requirements of Federal Rule of Civil Procedure 4.**

22      Plaintiffs' complaint set forth their causes of action for Defendants' breach of the

23  collective bargaining agreement and related trust agreements with requisite specificity.

24  Plaintiffs specified the parties, the agreements to which Defendants were (and are) bound, and

25  the applicable federal law governing each of the agreements.  The complaint also indicated the

26  total amount Defendants owed in fringe benefit contributions, liquidated damages and

27  prejudgment interest (through the date of the Complaint).  The Plaintiffs' complaint provided

28  their attorneys' fees and costs would be established by proof, which they provided in an affidavit

with their Motion for Default Judgment.  The Federal Rules of Civil Procedure require Plaintiffs to personally serve the summons and complaint on Defendants.  FED. R. CIV. P. 4.  Plaintiffs personally served the summons and complaint on both Marbella and Olmos.  Their service was verified by an affidavit of service from a professional process server.

### 4.    The sum of money at stake in the action.

Plaintiffs established their entitlement to a total of $38,361.56.   This amount is broken down as follows:

| | |
|---|---|
| Unpaid monthly contributions (including unpaid dues check-off) (September, 2009 through March, 2010) ................................................... | $ 12,476.00 |
| Liquidated damages for unpaid monthly contributions (September, 2009 through March, 2010)................................................................... | $ 3,645.92 [2] |
| Pre-Judgment interest for unpaid monthly contributions ........................... | $ 3,645.92 [3] |
| Audit fees ............................................................................................. | $ 1,596.39 |
| BAC Local 13 Dues Check-off Funds........................................... | $ 1,144.63 |
| Attorneys fees....................................................................................... | $ 11,501.00 |
| Costs ..................................................................................................... | $    791.88 |
| ***Total Judgment Amount*** | **$ 38,361.56** |

In addition to the above amounts, Plaintiffs are also entitled to post-judgment interest on the total judgment amount.

### 5.    Any possibility of a dispute concerning material facts is unlikely

The material facts in this case are indisputable: (1) at all times relevant to this action, Defendants were bound to a collective bargaining agreement, which obligated them to pay fringe benefit contributions for each hour of covered work performed; (2) Defendants and their employees performed a significant amount of covered work for which Defendants did not submit the mandatory contributions; and (3) Defendants have not made any payments in satisfaction of this obligation.  The delinquencies have not been satisfied either in whole or in part, and Defendants will not be able to provide evidence to the contrary.

---

[2] As described above, the Plaintiffs are entitled to double interest because their prejudgment interest amount is greater than their amount of contractually provided liquidated damages. 29 U.S.C. § 1132(g)(2)(C)(i).
[3] Pre-judgment interest is calculated at the parties' contractual rate of fourteen-percent (14%) per annum.

1    It is worth stressing that Defendants have *admitted* all of the hours of work that the

2  auditors determined were performed because the hours were determined using payroll and

3  related records the Defendants prepared and submitted. *See* FED. R. EVID. 801(d)(2).   Any

4  dispute over these facts is essentially foreclosed because the Defendants' records provided the

5  information concerning unpaid contributions.

6          **6.   Defendants' default was *not* due to excusable neglect**

7    The determination of whether neglect is excusable is an equitable decision, which takes

8  into account all relevant circumstances surrounding a party's omission. <u>TCI Group Life Ins.</u>

9  <u>Plan v. Knoebber</u>, 244 F.3d 691, 696 (9th Cir. 2001).  These circumstances include the danger of

10  prejudice to the debtor; the length of the delay [in requesting relief from default] and its

11  potential impact on judicial proceedings; the reason for the delay, including whether it was

12  within the reasonable control of the defaulting party; and whether the defaulting party acted in

13  good faith.  <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. P'ship</u>, 507 U.S. 380, 395, 113 S. Ct.

14  1489 (1993).

15    Not a single <u>Pioneer Investment</u> element weighs in the Defendants' favor.  This is true

16  because Plaintiffs' claims are easily verifiable, which demonstrates they will prevail at trial or

17  through a dispositive motion in the non-default context, such as a motion for summary

18  judgment.  Furthermore, Defendants have not once attempted to cure their default.  Instead,

19  while being well aware of the ongoing prosecution of this matter, both Marbella and Olmos

20  ignored the Complaint that was duly served upon them on April 12, 2011 and April 20, 2011,

21  respectively. The Plaintiffs gave the Defendants considerable time to answer the complaint or

22  cure their defaults, but the Defendants continued to ignore the legal proceeding against them.

23    Defendants cannot, in good faith, claim that their failure to respond to the Complaint was

24  due to excusable neglect.   Default was entered against each Defendant because of their

25  disinterest in responding to the Complaint, not an inability to do so.  *See* <u>TCI Group Life Ins.</u>

26  <u>Plan</u>, 244 F.3d at 696 (quoting <u>Pioneer Inv. Servs. Co.</u>, 507 U.S. at 395) (taking into account

27  whether [the dilatory conduct or delay] was within the reasonable control of the party seeking to

28  set aside default).  In fact, Defendants' continued non-participation in this case is culpable

1    conduct and constitutes an appropriate ground for entry of default and default judgment against

2    them. *See* <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392 (9th Cir. 1988),

3    *cert. denied*, 110 S. Ct. 168 (1989) (holding that culpable conduct occurs when a defendant

4    receives actual or constructive notice of the filing of a claim and intentionally fails to answer).

5    The Defendants' conduct in this case is clearly culpable conduct, and their failure to participate

6    in this case is not caused by excusable neglect. Accordingly, the entry of default in this case

7    was valid, and the Plaintiffs' Motion for Default Judgment is properly before this Court for

8    decision.

9          **7.    The potential for prejudice to the Plaintiffs warrants the entry of
                    default judgment, even when balanced with the Federal Rules of Civil**
10                 **Procedure's preference for decisions on the merits.**

11          Though decisions should be obtained after full hearings on the merits of the case; there

12   are certain situations when obtaining decisions based solely on the merits are simply impossible.

13   As shown in the preceding paragraphs, and the Plaintiffs' motions, this case presents a situation

14   in which a judgment on the merits is impossible. A decision on the merits is impossible if a

15   Defendant refuses and fails to answer the complaint or participate in a case. <u>Levi Strauss & Co.</u>

16   <u>v. Toyo Enterprise Co., LTD.</u>, 665 F. Supp. 2d 184, 1098 (N.D. Cal. 2009); <u>Pepsico, Inc. v.</u>

17   <u>California Security Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

18          In this case, the policy of the Federal Rules of Civil Procedure which favors decisions on

19   the merits must be measured against the great prejudice Plaintiffs will suffer if they are forced to

20   either file this action again (with little hope of the Defendants' participation in the new action);

21   forego the $38,361.56. they are entitled to under the collective bargaining agreement, trust

22   agreements and federal law; or to continue litigating the instant matter ostensibly against

23   themselves. This Court will not punish the Plaintiffs for the *Defendants'* continual refusal to

24   abide by the Federal Rules of Civil Procedure or participate in the judicial process. Great

25   prejudice would indeed be placed upon the Plaintiffs if this Court did not grant their motion for

26   default judgment.

27   / / /

28   / / /

6124                                                    15

/ / /

### 8. Plaintiffs' beneficiaries will suffer great prejudice if this motion is not granted.

Just as Plaintiffs have suffered prejudice because of the Defendants' failure to submit contributions, their beneficiaries will likely suffer greater prejudice if this Court fails to grant judgment to the Plaintiffs.  In order to enjoy the fruits of their own labor and fringe benefits administered by the Plaintiffs, the beneficiaries made certain contributions from their own paychecks.  Unfortunately, the beneficiaries have been unable to enjoy the benefit of their personal contributions because the Defendants failed to make the required contribution payments to the Plaintiffs.  This is an issue of public policy– the beneficiaries must be given the opportunity to enjoy the benefit of funds that they each contributed from their personal paychecks.

### D. OLMOS, AS A FIDUCIARY, IS LIABLE TO THE TRUSTS, JOINTLY AND SEVERALLY WITH MARBELLA

As demonstrated above, Marbella is liable for unpaid fringe benefit contributions, liquidated damages, prejudgment interest, and the Plaintiffs' attorney's fees and costs.  Mr. Olmos, as the treasurer, secretary and controlling shareholder of Marbella, is individually liable for these amounts because he is a fiduciary of the Plaintiff Trusts.  As a fiduciary, he had a duty to ensure Trust assets, here fringe benefit contributions, were properly submitted and not used for any other purpose.  Mr. Olmos did not ensure contributions were properly provided to the Plaintiffs, and he and Marbella owe a significant delinquency to the Trusts.

### 1. Mr. Olmos has a Fiduciary Duty to the Trusts and their Beneficiaries

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting … the disposition of its assets …(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  The United States Court of Appeals for the Ninth Circuit holds the definition of "fiduciary," under ERISA, extends to corporate officers and controlling shareholders.  Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1459–61 (9th Cir. 1995); *see also*

1   <u>Yeseta v. Baima</u>, 837 F.2d 380 (9th Cir. 1995) (holding a corporate officer liable as fiduciary

2   under ERISA). Because Mr. Olmos is the treasurer, secretary, and controlling shareholder of

3   Marbella, he is a "fiduciary" under ERISA. 29 U.S.C. § 1002(21)(A); *see also* <u>Trs. of the S.</u>

4   <u>Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc.</u>, 438 F. Supp. 2d 1156,

5   1167 (C.D. Cal. 2006) ("A plan fiduciary includes not only those named as fiduciaries in the

6   plan documents but anyone else who exercises discretionary control or authority respecting the

7   plan's management or disposition of its assets."). The <u>Temecula Mechanical</u> Court held a

8   fiduciary, "includes anyone, an individual, a corporation, etc., who has discretionary authority

9   over the management of the plan or its assets." <u>Id</u>. at 1168. The Plaintiff Trusts' assets include

10  unpaid, but due and owing fringe benefit contributions, Mr. Olmos, as a fiduciary, had control

11  over and "discretionary authority" to properly distribute contributions to the Plaintiffs.

12      Cases from courts beyond the Ninth Circuit have also held that corporate officers may be

13  liable for fiduciary breaches if they fail to submit contributions. *See* <u>Health Funds v. Nettleton</u>

14  <u>Mech. Contractors, Inc.</u>, 478 F. Supp. 2d 279, 283-84 (D. Conn. 2007); *see also* <u>NYSA-ILA</u>

15  <u>Medical & Clinical Serv. Fund v. Catucci</u>, 60 F. Supp. 2d 194, 202-03 (S.D.N.Y. 1999) (citing

16  <u>PBGC v. Solmsen</u>, 671 F. Supp. 938, 946 (E.D.N.Y. 1987)); <u>Connors v. Paybra Mining Co.</u>, 807

17  F. Supp. 1242, 1246 (S.D.W.V. 1992).

18      As a fiduciary, Mr. Olmos must "discharge [his] duties with respect to a plan solely in the

19  interest of the participants and beneficiaries and - - (A) for [the] exclusive purpose of (i)

20  providing benefits to participants and their beneficiaries; and ... (D) in accordance with the

21  documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1)(A)-(D). Mr. Olmos

22  breached his fiduciary duties and failed to act in the best interests of Marbella's participant

23  employees because he failed to transmit money withheld from the participant employee's wages

24  and converted them for use by Marbella. Mr. Olmos cannot dispute this fact because the

25  contributions are still outstanding and the Trusts have never received payment of those

26  contributions from Marbella or Mr. Olmos. There is no dispute that Mr. Olmos, as the treasurer,

27  secretary, and controlling shareholder of Marbella, is a fiduciary of the Trusts.

28  / / /

1   ///

2   ## 2.  Unpaid, but Due and Owing Contributions are Trust Assets

3   Courts recognize unpaid fringe benefit contributions as plan or trust assets when the

4   governing documents specify as such.  *See* <u>Temecula Mech., Inc.</u>, 438 F. Supp. 2d at 1165; *see*

5   *also* <u>Carpenters Pension Trust Fund for N. Cal. v. Moxley</u>, 2011 U.S. Dist. LEXIS 38106 (N.D.

6   Cal. 2010); <u>Health Funds v. Nettleton Mech. Contractors, Inc.</u>, 478 F. Supp. 2d 279, 283-84 (D.

7   Conn. 2007); <u>NYSA-ILA Medical & Clinical Serv. Fund v. Catucci</u>, 60 F. Supp. 2d 194, 202-

8   03 (S.D.N.Y. 1999) (citing <u>PBGC v. Solmsen</u>, 671 F. Supp. 938, 946 (E.D.N.Y. 1987));

9   <u>Connors v. Paybra Mining Co.</u>, 807 F. Supp. 1242, 1246 (S.D.W.V. 1992).

10  The Trust Agreements creating the Plaintiff Trusts provide that payments to be made to

11  the Trusts are contributions and as contributions, the payments are Trust assets. The Trust

12  Agreements govern the maintenance of the Trust, the duties of employers such as Marbella, and

13  the disposition of benefits to beneficiaries.  The agreements state that unpaid, but due and owing

14  contributions constitute assets of the Trusts.   For instance, Article 1, Section 11 of the

15  Agreement and Declaration of Trust Creating the Bricklayers and Allied Craftworkers Local 13

16  Vacation Fund ("Vacation Trust Agreement") states, in pertinent part:

17  > The assets of this Vacation Fund ***shall consist of*** the sums of money
18  > that ***have been or will be paid or which are due and owing*** to the
    > Fund by the Employers as required by the Collective Bargaining
    > Agreements and any and all other Contributions and Payments to the
19  > extent permitted by law.
20  (Emphasis added).

21  With regard to the Bricklayers and Allied Craftworkers Local 13 Defined Contribution

22  Pension Trust for Southern Nevada ("Pension Trust"), Section 1.01 of Amendment No. 5 to the

23  Agreement and Declaration of Trust Creating the Bricklayers and Allied Craftworkers Local 13

24  Defined Contribution Pension Trust for Southern Nevada ("Pension Trust Agreement") states as

25  follows: "All funds contributed to the Trust by Employers and all monies, properties, and other

26  things of value ***which may be contributed*** to or otherwise become part of the Trust from time to

27  time … shall constitute the trust fund covered by this Trust Agreement…"  (Emphasis added).

28  The Pension Trust Agreement clearly contemplates future unpaid contributions as Trust Assets.

1    Likewise, Section 1.09 of the Agreement and Declaration of Trust Establishing the

2  Bricklayers and Allied Craftworkers Local 13 Health Benefits Fund identifies such contributions

3  as those "***made or required to be made*** by Employers to the fund," thereby requiring and

4  including as trust assets of the Health Benefits Fund those future, unpaid but due and owing

5  fringe benefit contributions. (Emphasis added).

6    Article 2(d) of the Agreement and Declaration of Trust of the International Masonry

7  Institute ("Masonry Trust Agreement") states, in pertinent part, "Trust means this Trust

8  including the monies and other assets held under this Agreement and Declaration of Trust ***as***

9  ***well as future contributions*** provided for under collective bargaining agreements or otherwise."

10  (Emphasis added).   The Masonry Trust Agreement later addresses the manner in which

11  contributions are to be made, and defers to the Master Labor Agreement, which requires

12  contributions to be made in monthly payments.   This agreement also explicitly provides for

13  "future contributions," i.e. "contributions to be made" as trust assets.

14    The Restated Agreement and Declaration of Trust of the Bricklayers and Trowel Trades

15  International Pension Fund also defines "Trust Fund", "Fund", and "Trust" to include

16  contributions.  However, it should be noted that the Health Benefits Fund and the Pension Fund

17  are both defined contribution plans – that is, the employees do not receive benefits under such

18  plans until an employer contributes to the Trusts.  With Olmos' failure to effectively administer

19  these payments and timely make them to the various Trusts, he effectively interfered with his

20  employees' ability to receive the benefit of the trust agreements.

21    The agreements establishing the Plaintiff Trusts clearly contemplate not only payments

22  made as contributions and plan assets, but also include payments that are to be made as

23  contributions and plan assets.  Marbella's unpaid fringe benefit contributions are Trust assets

24  over which Mr. Olmos exercised discretionary authority.  Mr. Olmos is unable to dispute this

25  because all facts pled by the Plaintiffs are taken as true in this case, and the Trusts are entitled to

26  judgment against Mr. Olmos because he breached his fiduciary duty to the Trusts and their

27  beneficiaries.

28  / / /

### 3. Contributions Drawn from Employee Payroll Deductions are De Facto Trust Assets

Regardless of any specific language contained in the Trust Agreements, the U.S. Department of Labor has stated that employee contributions paid through employee payroll deductions are *de facto* trust assets. *See* 29 C.F.R. 2510.3-102(a).[4]  This conclusion is also supported by the United States Court of Appeals for the Ninth Circuit's decision in <u>Nelson v. EG & G Energy Measurements Group</u>, 37 F.3d 1384, 1390–91 (9th Cir. 1994).  The <u>Nelson</u> Court held employee contributions from payroll are plan assets. *Id.* at 1390-91.  The deductions become plan assets as soon as they "can reasonably be segregated from the employer's general assets." *Id.* at 1391.

In this case, the payroll deductions of Marbella's employees were plan assets as soon as they could reasonably be segregated from Marbella's general assets.  The reasonable time for segregation of funds has certainly passed.  Marbella's unpaid contribution reports from September 2009 have been due and owing for more than two full years.  Marbella withheld plan assets and Mr. Olmos, as a fiduciary, breached his duty to properly remit those assets to the Trusts.

Along with Marbella, Mr. Olmos is liable for unpaid fringe benefit contributions, liquidated damages, and prejudgment interest.  As shown above, Mr. Olmos breached his fiduciary duties to the Trusts and their beneficiaries, which entitles the Trusts to a statutorily mandated award of attorneys' fees and costs. 29 U.S.C. § 1132(g)(2); *see also* <u>Kemmis</u>, 706 F.2d at 997-98.  Mr. Olmos and Marbella are jointly and severally liable for the Plaintiffs' attorneys' fees and costs incurred in this action. *See* <u>Operating Eng'rs Pension Trust v. A-C Co.</u>, 859 F.2d at 1342.  As a fiduciary of the Trusts and co-fiduciary with Marbella, Mr. Olmos is jointly and severally liable for the Trusts' attorney's fees and costs in the amount of $12,292.88. *See* 29 U.S.C. § 1132(g)(2).

---

[4] "...[T]he assets of the plan include...amounts that a participant has withheld from his wages by an employer, for contribution to the plan..." *Id.*

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. This Court grants Plaintiffs Motion for Default Judgment against Defendants, Marbella Flooring, Inc. and Robert Olmos.

2. Defendants are jointly and severally liable to the Plaintiffs for unpaid fringe benefit contributions in the amount of $12,476.00.

3. The Defendants liability and Plaintiffs recovery of the unpaid contributions also entitles the Plaintiffs to recovery of liquidated damages, prejudgment interest, auditing costs, and attorney's fees and costs for a total judgment amount of $38,361.56.

**DATED** this 2nd day of December, 2011.

_____
Gloria M. Navarro
United States District Judge

Submitted by:

**THE URBAN LAW FIRM**

Nathan R. Ring, Nevada State Bar No. 12078
*Attorney for the Plaintiffs*

6124

21